THE PEOPLE OF THE STATE OF NEW YORK, Respondent, *v.* SHEMA KOMAR, Appellant.

Court of Special Sessions of the City of New York, Appellate Part, First Department, June 30, 1947.

*Borris M. Komar* for appellant.

*William L. Messing, George G. Allen* and *Alfred Newman,* for respondent.

*Per Curiam.* The appellant herein was convicted in the City Magistrate's Court, War Emergency District, The Bronx, on three separate complaints charging:

(1) That the appellant-landlord demanded and received for certain housing accommodations rent in excess of that pre-

scribed by subdivision (a) of section 4 of the Rent Regulation for Housing in the New York City Defense-Rental Area (8 Federal Register 13915), promulgated by the Federal Price Administrator, in violation of subdivision d of section U41–5.0 of the Administrative Code of the City of New York.

(2) That appellant-landlord removed the tenant from possession of said housing accommodations contrary to the provisions of section 6 of said Rent Regulation (8 Federal Register 13917–13918, as amd.) in violation of section 392 of the General Business Law of the State of New York.

(3) That appellant-landlord failed to register said housing accommodations pursuant to section 7 of said Rent Regulation (8 Federal Register 13919, as amd.), in violation of the New York State War Emergency Act (L. 1942, ch. 445, as amd.).

A fine was imposed in each of the three cases.

(1) Appellant is the owner of a two-family house consisting of three floors. On June 15, 1944, the third or uppermost floor was occupied by a tenant. It had been duly registered with the Office of Price Administration pursuant to section 7 of the Rent Regulation for Housing in the New York City Defense-Rental Area. At that time appellant occupied the first and second floors of the building. The first floor comprised four rooms but no kitchen or bathroom. The second floor consisted of a kitchen, bathroom and three additional rooms.

Shortly prior to the aforesaid date, appellant, a practical nurse, telephoned to complainant's sister in response to a newspaper advertisement inserted by complainant or his sister who were seeking someone to care for their sixty-seven-year-old invalid and bedridden mother. Thereafter, complainant and appellant made an arrangement whereby, in consideration of the payment of $100 monthly, appellant agreed to provide nursing and other services for complainant's mother who, together with complainant, were given the use and occupancy of three of the four rooms on the first floor. The fourth room on that floor was occupied as a bedroom by appellant's daughter. For part of the period during which this arrangement existed, appellant was caring for another invalid in one of her second-floor rooms. These three rooms on the first floor did not constitute an apartment as commonly understood or legally defined in the Multiple Dwelling Law or paragraph (17) of subdivision (a) of section 13 of the Rent Regulation for Transient Hotels, Residential Hotels, Rooming Houses and Motor Courts, as last amended, dated November 1, 1946 (11 Federal Register 13032, 13040).

The arrangement hereinabove described seems not to have been contemplated or foreseen in the rent regulation and is nowhere provided for therein. Complainant asserts that the relationship of landlord and tenant within the scope of the rent regulation was created because the sum of $70 of the monthly payment was by the agreement apportioned as rent and the remainder for services. This alleged apportionment was strenuously denied by appellant who contends that the contract was primarily one for services and the use and occupancy of the three rooms on the first floor only incidental to such services. These same rooms, unfurnished, had been occupied during the month of March, 1943, the maximum rent period, at a rental of $55 monthly, according to the tenant of that time. The alleged over-ceiling charge accordingly would be $15 monthly, the difference between $70 and $55. In this connection, it should be pointed out that in March of 1943, the rooms in question were unfurnished, whereas the appellant testified that when complainant and his mother entered into occupancy the rooms were furnished. Complainant contradicted this testimony although neither side developed the point to any great extent. The only evidence of apportionment of the monthly payment as between rent and services appears in complainant's unsupported testimony. There is no proof in the record, except by appellant, as to the value of the services performed by her, services which were substantial and important. Were we to determine the reasonable value of these services, it would render baseless any claim of over-ceiling charge for rent. Significantly, the only receipts for the monthly payments, produced by complainant, merely recited the amount of $100 as having been paid appellant by complainant's mother, without stating any apportionment between rent and services.

We are of the opinion that the evidence did not establish appellant's guilt on this charge beyond a reasonable doubt.

(2) This conviction is predicated upon the fact that on or about August 27, 1946, the appellant caused complainant's furniture to be removed from the rooms in appellant's premises against his will and without court action. Four months before August 15, 1946, appellant notified complainant and his mother that she desired to terminate the arrangement she had with them; that after that date she would no longer furnish nursing services to complainant's mother and requested possession of the rooms they occupied. On or about August 15, 1946, complainant's mother, pursuant to such notice voluntarily left the premises. The complainant remained in possession and refused

to vacate. In that situation the appellant consulted with an official in charge of such matters at the local Office of Price Administration and was told by such person that the Office of Price Administration was not concerned in the matter and that appellant should engage a city marshal to secure complainant's eviction. Appellant thereafter went to a city marshal who advised her to consult a lawyer and upon her lawyer's advice she caused complainant's belongings to be removed from the premises. No evidence was introduced at the trial by the People to contradict appellant's testimony regarding her consultations with the official or officials of the Office of Price Administration, although opportunity to produce such testimony was offered by the court.

It is claimed that this removal was contrary to section 6 of the Rent Regulation and therefore a violation of section 392 of the General Business Law.

In our view, the agreement was an entire contract for services and accommodations and it could not be said beyond a reasonable doubt on the evidence adduced that the agreement provided an apportionment as between rent and services. It is plainly evident that the primary purpose of the arrangement was to secure nursing services and personal attention for complainant's mother. Considered as a contract for personal services, appellant could terminate it at will. Complainant and his mother apparently acquiesced in the action taken by appellant to terminate the agreement when complainant's mother vacated the premises pursuant to the notice previously given. However, complainant remained in possession upon the termination date under a claim of right. If we were to assume that the rooms were furnished rooms as asserted by appellant, the situation would then come within the exception of paragraph (3) of subdivision (c) of section 6 of the Rent Regulation (8 Federal Register 13918) which states that the restrictions on the removal of a tenant as described in section 6 do not apply to an occupant of furnished rooms not constituting an apartment, located within the residence occupied by the landlord, where such landlord rents to not more than two occupants within such residence.

In any event, the evidence does not establish the relationship of landlord and tenant, within the scope of the Rent Regulation so as to permit complainant to remain in possession under the facts and circumstances appearing herein. In our opinion, the protection afforded to a tenant pursuant to the provisions of section 6 of the Rent Regulation was not available to the

complainant. (See Rent Regulation, § 6, subd. [a], par. [4]; § 6, subd. [c], par. [3].)

The conviction on this charge was not justified beyond a reasonable doubt.

(3) This conviction is for failure of the appellant to register housing accommodations pursuant to section 7 of the Rent Regulation, in violation of the New York State War Emergency Act (L. 1942, ch. 445, as amd.). The rooms in question were first rented by the appellant to one Richter in or about January, 1943. Section 7 of the Rent Regulation requires the registration of housing accommodations " On or before " December 15, 1943, or within thirty days after the property is first rented, whichever date is the later.

The complaint charges appellant with a violation of the New York State War Emergency Act in that " on and after " December 15, 1943, she failed to register her housing accommodations pursuant to said section 7. The complaint was sworn to November 8, 1946, at a time when subdivision 6 of section 101 of the New York State War Emergency Act which defines the violation and declares it to be an offense had already been repealed by section 1 of chapter 445 of the Laws of 1946, effective April 1, 1946. While this prosecution may not be affected or impaired even though commenced after the repeal of the statute under which it was brought, in view of the provisions of section 93 of the General Construction Law, there are other considerations which in our opinion require a reversal of this conviction.

We have already held on a state of facts similar to the instant situation that the offense consists in failure to register " On or before " December 15, 1943, and that the rent regulation does not set forth an offense for failure to file " On and after " December 15, 1943. (*People* v. *Loremady Realty Corp.*, 188 Misc. 944.) There being no legal basis for the charge, the conviction is improper.

Granting for the moment, however, that the complaint properly states a charge under the regulation, the action is nevertheless barred by the Statute of Limitations. In the *Loremady* case (*supra*) it was assumed and decided that the two-year Statute of Limitations properly applies in this type of case and that the statute began to run on December 15, 1943. When the instant action was commenced in November, 1946, the statute had already run its course. Truly, appellant did not interpose the defense of the Statute of Limitations at the trial. However, appropriate motions to dismiss the com-

plaint were made at the end of the People's case, and of the whole case. In our opinion, the failure to assert the Statute of Limitations as a defense is not necessarily fatal under the peculiar circumstances appearing herein. (*People* v. *Reiser,* 240 App. Div. 36.)

Accordingly, the three judgments are reversed and the complaints dismissed.

DE LUCA, P. J., HOFMANN and NORTHRUP, JJ., concur.